14 MAG 1209 ORIGINAL

Approved: _____
ANDREW DeFILIPPIS
Assistant United States Attorney

Before: HONORABLE FRANK MAAS
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - x
                                     :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA             :
                                     :  Violation of
       - v. -                        :  18 U.S.C. § 228(a)(3)
                                     :
STEVEN JORDAN,                       :  COUNTY OF OFFENSE:
       a/k/a "Stevie Jordan,"        :  NEW YORK
       a/k/a "Stevie J,"             :
                                     :
                    Defendant.       :
                                     x
- - - - - - - - - - - - - - - - - - -



SOUTHERN DISTRICT OF NEW YORK, ss.:

VINCENT MALDONADO, being duly sworn, deposes and says that he is a Special Agent with the Office of Inspector General, United States Department of Health and Human Services, and charges as follows:

### COUNT ONE

1.   From at least in or about March 2001 through in or about June 2014, in the Southern District of New York and elsewhere, STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, knowingly and willfully failed to pay a support obligation with respect to a child who resided in another state, such obligation having remained unpaid for a period longer than two years and having been greater than $10,000.

(Title 18, United States Code, Section 228(a)(3).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.   I am a Special Agent with the Office of Inspector General, United States Department of Health and Human Services,

and I have been involved in the investigation of the above-described offense. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including, among other things, my review of pertinent documents, and my communications with law enforcement officers and administrative agencies. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

3. I have spoken to an individual ("Witness-1") who told me, in substance and in part, the following:

    a. Witness-1 and STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, lived together in the State of New York from in or about 1996 through in or about 1999. Subsequently, JORDAN lived in Manhattan without Witness-1 until in or about 2001.

    b. Witness-1 and JORDAN had two children together: a male child ("Child-1") born in or about March 1997, and a female child ("Child-2") born in or about November 1998.

    c. Witness-1 moved out of the State of New York in or about 2001 and currently resides in the State of Pennsylvania. Child-1 and Child-2 currently reside in the State of Pennsylvania with Witness-1.

## Jordan's Child Support Obligations

4. From my review of records obtained from the Family Court of the State of New York, County of New York ("New York County Family Court"), I have learned the following:

    a. In or about March 1997, STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, signed an Acknowledgement of Paternity with respect to Child-1.

    b. In or about November 1998, JORDAN signed an Acknowledgement of Paternity with respect to Child-2.

c. On or about July 10, 1999, an order was entered by the New York County Family Court directing JORDAN to furnish child support obligation payments for Child-1 and Child-2 in an amount totaling $6,608 monthly.

d. On or about October 22, 2011, an order was entered by the New York County Family Court adjusting the defendant's child support obligation to an amount totaling $8,557 monthly for Child-1 and Child-2.

Jordan's Failure to Satisfy His Child Support Obligations

5. From my review of records maintained by the New York City Office of Child Support Enforcement (the "OCE"), I have learned the following:

a. According to an Account Statement obtained from the OCE, dated May 14, 2014, STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, owed child support obligations in the amount of approximately $1,107,412.

b. The most recent child support payments received by Witness-1 on behalf of Child-1 and Child-2 were as follows:

i. On approximately five occasions between on or about November 18, 2011 and on or about January 8, 2014, the New York State Department of Taxation and Finance garnished funds belonging to JORDAN in amounts ranging from $5,863 to $9,9999.99, and totaling $40,080.22, due to JORDAN's failure to make voluntary child support payments.

ii. On nine separate occasions from on or about November 9, 2006 through on or about August 2, 2010, funds belonging to JORDAN were automatically debited from accounts of JORDAN's employers and credited to Witness-1, due to JORDAN's failure to make voluntary payments. These payments ranged from $25.45 to $200 and totaled approximately $892.

iii. On or about December 7, 2009, JORDAN made a child support payment in the amount of $5,000. From my discussions with another law enforcement agent ("Agent-1"), I learned that JORDAN made this payment after being ordered by New York County Family Court to make a $25,000 payment by in or about November 2009. From my discussions with Agent-1, I also learned that New York State law enforcement authorities subsequently obtained two warrants for JORDAN's arrest in connection with his failure to meet his child support

3

obligations, which were dismissed or withdrawn for unknown reasons.

          iv.    Prior to that, JORDAN's last known voluntary child support payment to Witness-1 (i.e., a payment that did not result from garnishment of wages or garnishment of funds by the New York State Department of Taxation and Finance) occurred on or about February 13, 2001 in the amount of $6,608.

### Jordan's Ability to Pay Child Support

6.    From my review of records obtained from an employer of STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J,", the defendant("Employer-1"), I have learned the following:

    a.    Beginning in or about October 2012, JORDAN was employed as a cast member of a reality television show produced by a media company ("Employer-1").

    b.    The gross compensation received by JORDAN from Employer-1 for his role as a cast member amounted to approximately $27,000 per month.

    c.    During the period from January 2013 through August 2013, JORDAN was paid a total of at least $193,499 for his work on the reality television show; during that same period, JORDAN had a total of approximately $18,566 garnished and applied towards his child support obligation and made no voluntary payments of child support.

    d.    Records maintained by Employer-1 state that JORDAN is a resident of the State of California and works in the State of Georgia.

    e.    Records maintained by Employer-1 identify an individual ("Individual-1") as JORDAN's assistant and as a point of contact for JORDAN's direct deposit arrangement with Employer-1.

7.    From my discussions with Witness-1 and my review of publicly-available information regarding the reality show produced by Employer-1, I learned that, as of January 2014, STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, was still employed by Employer-1 as a cast member on the reality show referenced above.

8. I have obtained financial records pertaining to the corporate bank account of a company for which Individual-1, the aforementioned assistant to STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, is listed as signatory ("Company-1"). From those records, I learned that:

   a. On or about July 26, 2012, a cash deposit of $2,500 was made into the account denoting "Stevie J Deposit" on the slip.

   b. On or about January 22, 2013, Company-1 received a check in the amount of $12,690 made payable to "[Company-1], FSO: Steven Jordan."

   c. On or about March 25, 2013, a check in the amount of $5,278, was deposited into the account with the Memo field listing "Steven Jordan, Full and Final Payment".

   d. On or about October 4, 2013, a check in the amount of $40,000 was deposited into Company-1's account with the following appearing in the memo line: "ATL3 – Stevie J Advance."

9. I have obtained financial records pertaining to the corporate bank account of a company for which STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, is the signatory ("Company-2"). From those records, I learned that from October 2012 through September 2013, at least approximately $245,000 was deposited into Company-2's account. Among the originators of these deposits is a music label company that I know from public sources to have a relationship with JORDAN.

10. I have obtained records from a company that pays royalties to musicians ("Company-3"). From those records, I learned that from in or about 2003 through in or about 2013, Company-3 paid STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, approximately $105,000 in royalties.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of STEVEN JORDAN, a/k/a "Stevie Jordan," a/k/a "Stevie J," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
VINCENT MALDONADO
Special Agent
Department of Health and Human Services

Sworn to before me this
___ day of June 2014

_____
HONORABLE FRANK MAAS
United States Magistrate Judge
Southern District of New York

JUN 02 2014